[Cite as *Snell v. Howell*, 2024-Ohio-1522.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| KELSI MARIE SNELL, | : | |
| Appellee, | : | CASE NO. CA2023-08-093 |
| | : | O P I N I O N |
| - vs - | | 4/22/2024 |
| | : | |
| CHRISTOPHER LEE HOWELL, | : | |
| Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR20080564

Kelsi Marie Snell, pro se.

James R. Hartke, for appellant.

**S. POWELL, P.J.**

{¶ 1} Appellant, Christopher Howell, appeals the decision of the Butler County Court of Common Pleas, Domestic Relations Division, overruling his objections and affirming the decision of the magistrate to modify a child support order. For the reasons set forth below, we affirm the decision of the trial court.

## I. Facts and Procedural History

**{¶ 2}** Howell and appellee, Kelsi Marie Snell, were married on March 22, 2016. There are three minor children born issue of the marriage. In 2020, Snell filed for divorce, and on September 9, 2021, the trial court issued an agreed decree of divorce. On the same day, the court also issued a decree of shared parenting and adopted a shared parenting plan.

**{¶ 3}** Under the shared parenting plan, Howell is the child support obligor and Snell is the child support obligee. At the time the plan was issued, the court determined Howell's adjusted annual gross income to be $110,073.00 (working in information technology) and Snell's adjusted annual gross income to be $31,817.50 (working in the food service industry). Based on this income, according to the Basic Child Support Schedule and guidelines, Howell would ordinarily pay $1,748.93 per month. However, the trial court found it was in the children's best interest to deviate the amount of Howell's child support downward by the agreement of the parties, in consideration of the parties' agreed "parenting time schedule" and the parties' agreement to share daycare expenses—80% to be paid by Howell and 20% to be paid by Snell. Therefore, based on the deviation factors contained in R.C. 3119.22 and 3119.23, the trial court only ordered Howell to pay Snell a reduced amount of $1,035.37 per month, including $75.39 in cash medical support. All payments were to be paid through the Butler County Child Support Enforcement Agency ("CSEA").

**{¶ 4}** The plan also established that both Howell and Snell are liable for the health care of the children if they are not covered by private health insurance or cash medical support. In the event that private health insurance became available to Howell, the plan ordered him to provide the primary health insurance for the children.

**{¶ 5}** After the divorce, Howell changed jobs three times and never provided any

medical insurance to the children. Instead, Snell obtained Medicaid benefits for the children and updated her information once a year to maintain benefits. One of these annual updates triggered CSEA to conduct an administrative review of the child support order, without any request from Snell or Howell. On January 25, 2023, CSEA issued an administrative adjustment recommendation, establishing Howell's adjusted annual gross income at $153,062.16, and calculating a new monthly support obligation of $1,536.06. On February 1, 2023, Howell waived administrative hearing on the adjustment recommendation and instead filed a motion for judicial mistake of fact in the trial court, taking issue with the recommended increase in his support payment.

{¶ 6} A hearing was held before the trial court magistrate on March 14, 2023. Present for the hearing was Snell, Howell's attorney, and CSEA's attorney. Howell did not appear.

{¶ 7} Snell testified that she currently earns approximately $30,000 per year working full-time as a bartender. Snell also testified that Howell does not have stable housing for the children to stay with him overnight, has never paid for the children's daycare, and has never provided for the children's health insurance. Due to her increased parenting time, as well as health care and daycare costs, Snell testified that the child support Howell has paid does not sufficiently cover the children's expenses.

{¶ 8} On March 27, 2023, the magistrate issued a decision setting aside CSEA's administrative recommendation, but still modifying the child support order. The magistrate found that Howell had offered no reason to deviate the child support calculation downward, and the deviation provided for in the original shared parenting plan was no longer appropriate. Further, the magistrate found that Howell was not exercising all his court-ordered time with his children and failed to pay for daycare as previously agreed. Therefore, the "parenting time schedule" and shared daycare expenses were no

longer appropriate considerations to justify reducing his payment, and the deviation ordered in the original shared parenting plan was no longer in the best interest of the children. In an attached worksheet, the magistrate recalculated Howell's child support obligation and ordered he pay $1,988.48 per month, including $80.50 in cash medical support.

{¶ 9} On April 10, 2023, Howell filed written objections to the decision of the magistrate and requested an oral hearing. On July 20, 2023, a hearing was held before the trial court judge, and on July 25, 2023, the trial court overruled Howell's objections and affirmed the magistrate's decision in all respects. On August 17, 2023, Howell appealed to this court.[1]

## II. Legal Analysis

{¶ 10} On appeal, Howell presents five assignments of error for our review. For the following reasons, this court disagrees with Howell and affirms the decision of the trial court.

{¶ 11} Assignment of Error No. 1:

IT IS AN ABUSE OF DISCRETION AND IN VIOLATION OF STATUTE FOR A COURT TO IMPOSE AN UNJUSTIFIED MODIFICATION TO A SHARED PARENTING PLAN INITIATED WITHOUT CAUSE BY CSEA FOR ADMINISTRATIVE ADJUSTMENT REVIEW RECOMMENDATION FOURTEEN TO SIXTEEN MONTHS AFTER AN ORDER ON AN AGREED SHARED PARENTING PLAN IN FORCE.

{¶ 12} In his first assignment of error, Howell argues that pursuant to Ohio Adm.Code 5101:12-60-05.1, CSEA lacked the authority to initiate an administrative review of the child support order on its own, without any request from the parties and less

---

1. Howell also filed a motion for a new trial on August 7, 2023, but appealed before the trial court issued any decision. That motion remains unresolved.

- 4 -

than 36 months after the most recent child support order was put into place. Here, the most recent child support order went into effect on September 9, 2021, and CSEA issued the findings of its administrative review on January 25, 2023, 16 months later.

**{¶ 13}** Nevertheless, Howell waived his right to an administrative hearing on CSEA's administrative adjustment recommendation and did not challenge CSEA's authority to conduct a review sooner than 36 months. Instead, Howell filed a motion for a judicial mistake of fact in the trial court and did not present any argument to the magistrate regarding the timing of CSEA's review. When Howell filed his written objections to the magistrate's decision, he still did not present any argument on the timing of CSEA's review, only raising the issue for the first time orally at the hearing before the trial court judge on July 20, 2023.

**{¶ 14}** By failing to timely object to the timing of CSEA's review, Howell has waived any alleged error in that regard. *See Perez v. Simkins*, 7th Dist. Mahoning No. 13 MA 146, 2014-Ohio-4006, ¶ 11 (holding that res judicata prevented father from contesting CSEA's ability to conduct an administrative review sooner than 36 months after the most recent child support order went into effect).

**{¶ 15}** Howell's first assignment of error is overruled.

**{¶ 16}** Assignment of Error No. 2:

> THE COURT ABUSES ITS DISCRETION BY FAILING TO CORRECT A FACTUAL MISTAKE CONCERNING AN OBLIGOR'S ANNUAL GROSS INCOME PROVEN BY UNEQUIVOCAL EVIDENCE DOCUMENTED BY OBLIGOR'S EARNING STATEMENT FOR THE ENTIRE CALENDAR YEAR.

**{¶ 17}** In his second assignment of error, Howell argues the court improperly calculated his annual gross income. We disagree.

**{¶ 18}** In support of his argument, Howell cites an "ADP Earnings Statement" that

his total income in 2022 was only $114,113.92, rather than the $153,062.16 calculated by the magistrate as his annual gross income. Howell also cites his own testimony at the July 20, 2023 hearing, explaining that he was not always employed 12 months per year, and changed employers from TQL, to Palo Alto Network Inc., to CDW, with contracts of various lengths. However, Howell admitted that his monthly salary, if annualized, would equate to $152,000 per year.

{¶ 19} Trial courts have considerable discretion in formulating child support awards and a trial court's decision regarding child support will not be reversed absent an abuse of discretion. *Lafever v. Lafever*, 12th Dist. Clermont No. CA2014-02-017, 2015-Ohio-823, ¶ 12. "An abuse of discretion is more than an error of law or judgment, it implies that the attitude of the court is unreasonable, arbitrary, or unconscionable." *In re F.S.*, 12th Dist. Fayette Nos. CA2020-08-011 and CA2020-08-012, 2021-Ohio-345, ¶ 42, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 5 Ohio B. 481 (1983). The vast majority of cases in which an abuse of discretion is asserted involve claims that the decision is unreasonable. *In re L.W.*, 12th Dist. Preble No. CA2020-12-019, 2021-Ohio-2461, ¶ 21. "A decision is unreasonable where it is not supported by a sound reasoning process." *In re L.M.*, 12th Dist. Preble Nos. CA2020-12-017 and CA2020-12-018, 2021-Ohio-1630, ¶ 22.

{¶ 20} Here, the trial court magistrate calculated Howell's income based on information from Palo Alto Network Inc. that reported his rate of pay as $6,377.59 paid semi-monthly. This rate was annualized to $153,062.16. Although Howell had changed employers several times and was not employed for certain months in the years between the divorce and this most recent child support adjustment, he earned this rate of pay for nine consecutive months when working for Palo Alto. Annualizing this rate to calculate Howell's yearly income was reasonable and the trial court did not abuse its discretion.

{¶ 21} Howell's second assignment of error is overruled.

{¶ 22} Assignment of Error No. 3:

IT IS AN ABUSE OF DISCRETION AND IN VIOLATION OF STATUTE FOR A COURT TO MODIFY A SHARED PARENTING PLAN WITHOUT EVIDENCE OF A SUBSTANTIAL CHANGE IN CIRCUMSTANCES.

{¶ 23} In his third assignment of error, Howell argues the trial court failed to determine that there was a substantial change in circumstances to justify modifying the child support order. Howell asserts that the child support calculation had not changed by at least ten percent to satisfy R.C. 3119.79(A) and establish a substantial change in circumstances. We disagree.

{¶ 24} "The modification of a child support order is governed by the requirements of R.C. 3119.79." *Banfield v. Banfield*, 12th Dist. Clermont Nos. CA2010-09-066 and CA2010-09-068, 2011-Ohio-3638, ¶ 18. When considering a motion to modify a child support order, the trial court must recalculate the amount of support required to be paid pursuant to the statutory child support guideline schedule and the applicable worksheet using the parties' updated financial information. R.C. 3119.79(A). A deviation of ten percent in the amount to be paid between the original support order and the recalculated amount under the current circumstances is deemed to be a "'change of circumstance substantial enough to require a modification of the child support amount.'" *Le v. Bird*, 12th Dist. Butler No. CA2005-04-090, 2006-Ohio-204 at ¶ 6, quoting R.C. 3119.79(A).

{¶ 25} R.C. 3119.79(A) must also be read in conjunction with R.C. 3119.79(C), which provides:

If the court determines that the amount of child support required to be paid under the child support order should be changed *due to a substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order or the last modification of the child support order*, the court shall modify the amount of child

support required to be paid under the child support order to comply with the schedule and the applicable worksheet through the line establishing the actual annual obligation, unless the court determines that the amount calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet would be unjust or inappropriate and would not be in the best interest of the child and enters in the journal the figure, determination, and findings specified in section 3119.22 of the Revised Code.

(Emphasis added). "R.C. 3119.79(C) [therefore] provides an independent basis for permitting modification of an existing child support order without consideration of the ten percent change discussed in subdivision (A) of the statute." *Banfield*, 2011-Ohio-3638 at ¶ 20; *See also Flege v. Flege*, 12th Dist. Butler No. CA2003-05-111, 2004-Ohio-1929, ¶ 33.

**{¶ 26}** "Where * * * the parties [have] voluntarily agree[d] to the amount of the obligor's child support obligation, a trial court granting a motion for modification must find both (1) a change of circumstances, and (2) that such a change of circumstances 'was not contemplated at the time of the issuance of the child support order.'" *Bird*, 2006-Ohio-204 at ¶ 9, quoting *Bonner v. Bonner*, 3d Dist. Union No. 14-05-206, 2005-Ohio-6173, ¶ 11.

**{¶ 27}** Here, in the original shared parenting plan, the parties had agreed to deviate Howell's payments downward "due to the parties' parenting time schedule" and in consideration of the parties' agreement to share daycare expenses. However, the magistrate found that based on Snell's testimony, Howell had not been exercising all his court-ordered time with his children and never paid his portion of the daycare expenses. Therefore, the magistrate found that the deviation was no longer in the best interest of the children and should be terminated. This change in parenting time and Howell's failure to pay for daycare was a change of circumstances not contemplated when the original child support order was issued. Therefore, the trial court did not abuse its discretion when

it terminated the deviation from the calculated amount of child support Howell was ordered to pay.

{¶ 28} Howell's third assignment of error is overruled.

{¶ 29} Assignment of Error No. 4:

IT IS AN ABUSE OF DISCRETION AND IN VIOLATION OF STATUTE TO FAIL TO INCLUDE EXTRAORDINARY PARENTING TIME DOWNWARD DEVIATION PRESUMED TO BE IN THE BEST INTERESTS OF THE CHILDREN IN THE CALCULATION OF CHILD SUPPORT OBLIGATION WITHOUT EXPRESS LEGAL JUSTIFICATION

{¶ 30} In his fourth assignment of error, Howell argues the trial court abused its discretion by terminating the agreed deviation in the original shared parenting plan without justification. In support of his argument, Howell claims that he provided 160 nights annually of overnight parenting time and cites R.C. 3119.051 for the proposition that a ten percent reduction in individual support obligations is required where there are more than 90 overnights per year. We disagree.

{¶ 31} Here, the magistrate recognized that Howell was ordered to provide 130 nights annually of overnight parenting time, and specifically left in place the ten percent reduction dictated by R.C. 3119.051. However, the magistrate found Snell's testimony credible that Howell did not have appropriate housing to have the children overnight regularly, that he was not exercising all his allotted parenting time, and that he was not paying for daycare as agreed in the original shared parenting plan. Therefore, the magistrate terminated the additional deviation that had been agreed upon in the original shared parenting plan because circumstances had changed, and the deviation was no longer in the best interest of the children.

{¶ 32} The trial court did not violate R.C. 3119.051, nor did it abuse its discretion when it terminated the additional deviation.

**{¶ 33}** Howell's fourth assignment of error is overruled.

**{¶ 34}** Assignment of Error No. 5:

> IT IS AN ABUSE OF DISCRETION FOR A COURT TO INCLUDE THE DIFFERENCE IN INCOME OF THE PARTIES IN CALCULATING THE FINANCIAL ASPECT OF CHILD SUPPORT AS REQUIRED BY LAW AND, AT THE SAME TIME, IGNORE DOWNWARD DEVIATIONS FOR EXTRAORDINARY PARENTING TIME BASED ON THAT SAME DISPARITY OF INCOME.

**{¶ 35}** In his fifth assignment of error, Howell argues the trial court abused its discretion by considering the disparity in income between the parties when terminating the agreed deviation in the original shared parenting plan. We disagree.

**{¶ 36}** "Pursuant to R.C. 3119.22, a trial court may deviate from the standard child support order if, after considering the factors and criteria set forth in R.C. 3119.23, such an order would be unjust or inappropriate and would not be in the best interest of the children." *Hilbert v. Hilbert*, 12th Dist. Butler Nos. CA2015-10-182 and CA2015-11-185, 2016-Ohio-8099, ¶ 29, citing *Brown v. Brown*, 12th Dist. Butler No. CA2014-09-184, 2015-Ohio-1930, ¶ 7. In determining if a deviation is in the best interest of the children, R.C. 3119.23 sets forth a number of factors that the court may consider. *Id.* Pertinent to the case at bar, such factors include: extended parenting time or extraordinary costs associated with parenting time; disparity in income between parties or households, the relative financial resources, other assets and resources, and needs of each parent; as well as any other factor for consideration. R.C. 3119.23 (C), (E), and (Q). In reviewing the previously agreed deviation, the trial court was permitted to consider the disparity in income and resources between the parties in addition to the changed circumstances regarding parenting time and Howell's failure to pay for daycare.

**{¶ 37}** Howell's fifth assignment of error is overruled.

{¶ 38} Accordingly, for the reasons stated above, the trial court did not abuse its discretion in modifying the child support order.

{¶ 39} Judgment affirmed.

PIPER and BYRNE, JJ., concur.