[Cite as *Dauer v. Dauer*, 2025-Ohio-5734.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Sommer L. Dauer                                  Court of Appeals No.   {87}WD-24-086

    Appellee                                     Trial Court No.  2019 DR 0083

v.

Matthew J. Dauer                                 **DECISION AND JUDGMENT**

    Appellant                                    Decided: December 23, 2025

* * * * *

Margaret G. Beck, for appellee.

Karin L. Coble, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} Appellant, Matthew J. Dauer, Sr. ("father"), appeals the child support order in the November 12, 2024 judgment of the Wood County Court of Common Pleas, Domestic Relations Division.  For the reasons that follow, we affirm the trial court's judgment.

**{¶ 2}** Father sets forth two assignments of error:

1. The trial court abused its discretion by refusing to modify child support based on change of circumstances.

2. The trial court erred by including a capital gain in determining [father's] income for child support purposes.

## Background

**{¶ 3}** Father and appellee, Sommer Dauer ("mother"), were married in 2009 and have three children. Mother filed a complaint for divorce in 2019. The parties were granted a divorce in March 2021, at which time only one child, K.D., who was born in January 2010, was not emancipated.

**{¶ 4}** In its March 19, 2021 final judgment entry of divorce ("divorce decree"), the trial court noted that the parties reached an agreement as to, inter alia, child custody, spousal support and child support. More specifically, the parties agreed to a shared parenting plan for K.D., a nonmodifiable waiver of spousal support and an upward deviation in the amount of child support paid by father to mother. The child support guidelines set forth $525.88 per month for child support[1] plus cash medical support of $19.29 monthly, for a total of $556.07 per month, but the parties agreed to the sum of $750 per month for child support plus zero cash medical support "until such time as the child becomes emancipated or until further order of [the] Court."

---

[1] The figures do not include any fees.

2.

{¶ 5} On July 10, 2024, an "Administrative Modification Recommendation" was filed with the trial court. That same day, an attorney for the Wood County Child Support Enforcement Agency ("the agency") filed an entry of appearance.

{¶ 6} On July 25, 2024, the agency filed a "Notice to Court: Request for Court Hearing on Administrative Modification Recommendation." In the notice, the agency set forth a recommendation for a revision in the amount of child support to $456.80 per month plus cash medical support of $16.20 per month for a total monthly child support obligation of $473.00. Also in the notice, the agency represented that on July 17, 2024, mother filed a request for an administrative adjustment hearing because "[e]xpenses [for K.D.] have gone up with inflation."

{¶ 7} A hearing was held on September 24, 2024. Mother requested that the amount of the child support obligation remain at $750 per month while father, who sought review of the existing child support obligation, requested a reduction based on his income set forth on his 2023 tax return.

{¶ 8} On November 12, 2024, the trial court issued a judgment entry ordering that the monthly child support obligation should remain at $750.00.

{¶ 9} Father timely appealed.

**Law**

{¶ 10} Child support orders for shared parenting plans are governed by R.C. 3119.24, which provides in relevant part as follows.

3.

(A)(1) A court that issues a shared parenting order . . . shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet, except that, if that amount would be unjust or inappropriate to the children or either parent and therefore not in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount.

(2) The court shall consider extraordinary circumstances and other factors or criteria if it deviates from the amount described in division (A)(1) of this section and shall enter in the journal the amount described in division (A)(1) of this section its determination that the amount would be unjust or inappropriate and therefore not in the best interest of the child, and findings of fact supporting its determination.

{¶ 11} R.C. 3119.22 provides:

The court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet would be unjust or inappropriate and therefore not be in the best interest of the child. If it deviates, the court must enter in the journal the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, its determination that the amount would be unjust or inappropriate and therefore not in the best interest of the child, and findings of fact supporting that determination.

{¶ 12} R.C. 3119.23 states in pertinent part:

The court may consider any of the following factors in determining whether to grant a deviation pursuant to section 3119.22 of the Revised Code:
. . .

(C) Extended parenting time or extraordinary costs associated with parenting time, including extraordinary travel expenses when exchanging the child or children for parenting time;
. . .

(I) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;

. . .

(Q) Any other relevant factor.

{¶ 13} The modification of a child support order is governed by R.C. 3119.79, which provides in relevant part:

(A) If an obligor or obligee under a child support order requests that the court modify the amount of child support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet. If that amount as recalculated is more than [10%] greater than or more than [10%] less than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount.

. . .

(C) If the court determines that the amount of child support required to be paid under the child support order should be changed due to a substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order or the last modification of the child support order, the court shall modify the amount of child support required to be paid under the child support order to comply with the schedule and the applicable worksheet, unless the court determines that those amounts calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet would be unjust or inappropriate and therefore not in the best interest of the child and enters in the journal the figure, determination, and findings specified in section 3119.22 of the Revised Code Child [the child support guideline worksheets and instructions].

{¶ 14} In *Bonner v. Bonner*, 2005-Ohio-6173, ¶ 4, 13, 16 (3d Dist.), the parties had entered into a separation agreement (which was incorporated in the divorce decree) wherein the father agreed to pay child support in an amount exceeding the guidelines schedule until the youngest child reached the age of 18. Approximately two years after the divorce, the father sought to modify the amount of child support he was required to pay. *Id.* at ¶ 6. The trial court denied the modification request. *Id.* The appellate court determined the facts of the case required that R.C. 3119.79(A) and (C) be read in conjunction with each other, because when "a party voluntarily agrees to pay child support in an amount exceeding the statutory child support guideline schedule, a trial court granting a motion for modification must find both (1) a change of circumstances, and (2) that such a change of circumstances 'was not contemplated at the time of the issuance of the child support order.'" *Id.* at ¶ 8, 11.

{¶ 15} The *Bonner* court found that although there was a change of circumstances within the meaning of R.C. 3119.79(A), the circumstances surrounding the 10% income deviation were contemplated by the parties at the time of the initial child support order. *Id.* at ¶ 15. Thus, the court concluded the father failed to establish the "second element under R.C. 3119.79(C) required for a modification of his child support obligation." *Id.*

{¶ 16} *See also Le v. Bird*, 2006-Ohio-204, ¶ 7, 9 (12th Dist.) and *Boersma v. Brancatto*, 2013-Ohio-3052, ¶ 11 (6th Dist.), where the courts, relying on *Bonner*, determined that R.C. 3119.79(A) must be read in conjunction with R.C. 3119.79(C).

6.

**Trial Court's March 19, 2021 Divorce Decree**

{¶ 17} As it relates to child support, the trial court's entry states, in relevant part:

> Matthew J. Dauer, Sr. shall pay, as and for child support the deviated sum of . . . ($750.00), plus a cash medical support award of ($0.00), plus the (2%) processing fee . . .
>
> The parties are not in[]compliance with the Ohio Child Support Guidelines, nevertheless the parties believe that the . . . deviation . . . is in the best interest of the minor [child] and is in compliance with the pertinent provisions of the Ohio Revised Code § 3119.23, for the following reasons:
>
> (1) Extended parenting time or extraordinary costs associated with parenting time, including extraordinary travel expenses when exchanging the child or children for parenting time (the parties are utilizing an equal time split, which exceeds the 90 overnights per year);
>
> (2) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;
>
> (3) The parties submit that said deviation is in the best interest of the minor [child].
> . . .
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that said child support shall continue until such time as the child becomes emancipated or until further order of this Court. . .

**Trial Court's November 12, 2024 Judgment Entry**

{¶ 18} In its entry, the trial court set forth the following relevant information:
. . .

**Findings of Fact**

. . .

6. The Divorce Decree provides that based on [mother's] gross income of $39,513.00 and [father's] average annual gross income, with deprec[i]ation

7.

added back, of $62,054.00, [father] would ordinarily pay $525.88 as child support; $19.29 as cash medical support. . .

. . .

8. The Divorce Decree divides all medical expenses for the minor child that exceed the cash medical support obligation between the parties with [mother] responsible for 35% and [father] responsible for 65% of the expenses.

9. [Father] testified that he is a self-employed farmer who works with his [dad] to farm approximately 1,200 acres of land each year.  He is half-owner of some properties and one-quarter owner in other operations.

. . .

13. *[Father] admitted that his income varies substantially, which he knew in 2021 when he agreed to the upward deviation for child support.*

. . .

19. Both parties testified that the minor child has medical expenses which have been split between the parties with [father] paying 65% and [mother] paying 35% of the expenses.

20. Both parties have expenses related to raising a child in their home, including but not limited to, internet for school work, food, clothing, and other items.

### Conclusions of Law

. . .

2. The modification of a child support obligation is governed by Ohio Revised Code 3119.01 et seq.

. . .

4. R.C. 3119.051(A) requires the amount of child support to be reduced by 10% when the obligor has ninety or more overnights per year.

5. A court must use the parties updated financial information to "recalculate the amount of child support to be paid pursuant to the statutory child support guideline schedule and the applicable worksheet."  R.C. 3119.79(A).

6. For a court to modify a child support order, there must be a substantial change of circumstance that was not contemplated at the time of the original order. *Funkhouser v. Funkhouser*, 2019-Ohio-733, ¶ 36 (6th Dist.); *Bonner v. Bonner*, 2005-Ohio-6173, ¶¶ 10-11 (3d. Dist.). *See also* R.C. 3119.79(A) and (C).

7. Generally, there is a change in circumstance if there is a [10%] difference between the recalculated child support amount and the amount of child support under the existing order. R.C. 3119.79(A).

8. [Mother] is employed at Kroger and earned $43,347.15 in 2023. Her annual cost for private health insurance for the minor child is $1,290.00.

9. [Father] is self-employed as a farmer.

10. Gross income includes self-generated income, which is defined as "gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. R.C. 3119.01(13); R.C. 3199.01(20).

11. "Ordinary and necessary expenses incurred in generating gross receipts' means actual cash items expended by the parent or the parent's business and includes depreciation expenses of business equipment as shown on the books of a business entity." R.C 3119.01(16)(a). But they do "not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business." R.C. 3119.01(16)(b).

12. In 2023, [father] had gross receipts from business in the amount of $113,998.00.

13. For purposes of calculating [father's] income for child support, [his] depreciation expenses in the amount of $17,344.00 and "other" expenses in the amount of $4,577.00 cannot be considered "ordinary and necessary expenses incurred in generating gross receipts." Therefore, in 2023, [he] had ordinary and necessary business expenses in the amount of $107,686.00 and the depreciation expenses of $17,344.00 and $4,577.00 must be included in [his] income.

9.

14. In 2023, [father] received $12,783.00 from capital gains; $11,604.00 from rents and royalties, and $3,217.00 from the sale of business property.

15. For purposes of child support calculations, [father's] 2023 income is $55,445.66. See attached Child Support Worksheet.

16. Based on [mother's] adjusted gross income of $42,051.15 and [father's] adjusted gross income of $55,445.66, [father] would ordinarily pay $555.07 per month as child support; $24.18 per month as cash medical support; [$579.25 per month total]. . .

17. *The change from a support obligation of $750.00 a month to $579.25 a month is more than a 10% change. However, there has not been a substantial change in the circumstances in the parties' respective situations, nor has there been a change in the original reasons for the deviation. Specifically, the ordered parenting time schedule remains substantially the same, the parties are splitting the extracurricular and medical costs for the minor child as specified in their Divorce Decree and the parties agreed the deviation was in the best interest of the minor child.*

18. Pursuant to R.C. 3119.22, "[t]he court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet would be unjust or inappropriate and therefore [would] not be in the best interest of the child.

19. The Court has considered all the factors set forth in R.C. 3119.23, specifically (C) extended parenting time, (I) significant in[-]kind contributions from a parent, and (Q) any other relevant factor, including that there has not been a change in the original reasons for the upward deviation.

20. *The Court finds that the amount of child support calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet is unjust or inappropriate and would not be in the best interest of the minor [child].*

21. The Court further finds that the request to decrease the child support is denied as it is not in the best interest of the child. The prior agreed upon child support amount will continue as previously ordered, to wit $750.00 per month plus processing fees.

**IT IS THEREFORE ORDERED, ADJUGED, AND DECREED THAT** . . .

2. Effective August 1, 2024, [father] shall pay to [mother] the sum of $750.00 per child per month for child support; $0.00 per child per month for cash medical support; plus administrative processing fees . . .

3. The parties shall divide all medical expenses for the minor child that exceed the cash medical support obligation with [mother] responsible for 35% percent and [father] responsible for 65% of the expenses.

4. [Mother] shall remain the health insurance obligor and maintain health insurance currently in effect for the minor child.

(Emphasis added.)

### Standard of Review

{¶ 19} "It is well established that a trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed [on appeal] absent a showing of an abuse of discretion." *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). *See also Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997). An abuse of discretion means the trial court's decision was unreasonable, arbitrary, or unconscionable. *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610 (1996).

## First Assignment of Error

{¶ 20} Father argues the trial court abused its discretion by continuing the upward deviation, denying the manifest change of circumstances and using statutory rationale for downward deviation to justify an upward deviation.

{¶ 21} Father asserts there is no question that the trial court found the recalculated child support rate to be more than 10% less than the current support order. He contends the first substantial change of circumstance is that the parties contemplated that the significant upward deviation would be adjusted after three years, and he did not expect that the extra amount would be continued at the end of that period. He requested a three-year review because "we all assumed it would be adjusted after that." He further argues his income has significantly declined since the original order, by more than 25%, yet it was somewhat masked by the trial court including his capital gain in his current income. He claims for the foregoing reasons, he has met the threshold for a substantial change of circumstances which was not contemplated at the time of divorce.

{¶ 22} Father also asserts that while a trial court is permitted to deviate from the standard child support calculation in certain situations, the guidelines amount is presumed to be correct. He submits the presumption may only be overcome by the deviation-seeking party meeting a burden of proof and production by "'provid[ing] facts from which the court can determine that the actual annual obligation is unjust or inappropriate and would not be in the children's best interest.'" *King v. King*, 2021-Ohio-2970, ¶ 55 (6th Dist.), quoting *Irish v. Irish*, 2011-Ohio-3111, ¶ 16 (9th Dist.).

12.

{¶ 23} Father maintains since there is a shared parenting plan, the trial court had the discretion to deviate from the guidelines, and the list of facts to be considered, set forth in R.C. 3119.23, include extended parenting time and extraordinary costs. He claims he has extended parenting time, splits extracurricular costs and pays 65% of excess medical expenses, which "are all reasons that the trial court could have granted a downward deviation - which [he] has never asked for. Instead they were erroneously listed by the trial court to justify its upward deviation!" Father asserts "[t]o suggest, as the trial court stated, that the presumptive support amount calculated pursuant to the guideline is 'unjust or inappropriate' is to stand the statutory scheme on its head. This determination is meant to be used to protect someone like [him] from the occasional harshness of the guideline regime, not to be used against him to justify an inflated support order."

{¶ 24} Mother counters that the trial court correctly determined that there was no need to modify the deviation and used the reasons for the upward deviation as originally agreed upon by the parties, but father asks this court to second guess those reasons and set them aside with no evidence that the reasons for the deviation are no longer applicable. She argues there was no testimony at the hearing that the deviation was to be withdrawn after a three-year period, rather the testimony suggested that not much has changed with the parties or the child. She acknowledges that father's income may have declined, but the variability of income from farming was not unexpected in that it was contemplated at the time of the original order.

13.

{¶ 25} Mother contends the trial court made the child support calculations per the guidelines, examined the factors stated for the deviation as set forth in the divorce decree and determined it was not in the child's best interest to eliminate the agreed upon deviation. She maintains that the trial court did not abuse its discretion.

**Analysis**

{¶ 26} As noted above, the modification of a child support order is governed by R.C. 3119.79, and a modification may be ordered if there is a change of circumstance substantial enough to require modification. Such a change exists when the recalculated child support amount is 10% greater or lesser that the original award, R.C. 3119.79(A), and the change of circumstances "was not contemplated at the time of the issuance of the original child support order or the last modification * * *." R .C. 3113.79(C).

{¶ 27} Upon review of the record and the applicable law, we find the facts dictate that R.C. 3119.79(A) be read in conjunction with R.C. 3119.79(C), in accordance with *Bonner*, 2005-Ohio-6173 (3d Dist.) and *Brancatto*, 2013-Ohio-3052 (6th Dist.). We also find that the trial court applied R.C. 3119.79(A) in conjunction with R.C. 3119.79(C), per *Bonner*.

{¶ 28} We further find that the trial court complied with R.C. 3119.79(A), by recalculating the amount of support that would be required to be paid under the child support order in accordance with the schedule and worksheet, and by determining that the amount was more than a 10% change from the existing child support order.

14.

{¶ 29} In addition, we find that the trial court complied with R.C. 3119.79(C), by finding that father "admitted that his income varies substantially, which he knew in 2021 when he agreed to the upward deviation for child support" and by deciding that there had not been a substantial change in the circumstances in the parties' situations and there had not been a change in the original reasons for the deviation. The trial court noted that the ordered parenting time schedule was substantially the same, the parties were splitting the child's extracurricular and medical costs, as specified in the divorce decree, and the parties agreed the deviation was in their child's best interest.

{¶ 30} We observe the trial court cited R.C. 3119.22 as authority to deviate from the child support amount determined by the schedule and worksheet, the court set forth it considered the R.C. 3119.23 factors and stated the factors in support of the deviation, and the court found that the amount of child support calculated pursuant to the schedule and worksheet was unjust or inappropriate and would not be in the child's best interest. We find that the trial court followed the authority of *Bonner* and the applicable statutes in arriving at its decision to continue the upward deviation of the child support obligation and deny the requested modification because father failed to establish the second element under R.C. 3119.79(C), which was required for a modification of his child support obligation. As such, we find the trial court did not abuse its discretion by refusing to modify father's child support obligation because there was no change of circumstances. Accordingly, father's first assignment of error is not well-taken.

15.

## Second Assignment of Error

{¶ 31} Father argues that the trial court erred by including a capital gain in determining his income for child support purposes.

{¶ 32} Having found that the trial court did not abuse its discretion when it determined there had not been a substantial change in the circumstances in the parties' situations to support a modification of father's child support obligation, we need not consider father's second assigned error. Our disposition of father's first assignment of error renders moot the arguments he presents in support of his second assignment of error.

{¶ 33} Notwithstanding, assuming arguendo that capital gains should not have been included in father's income for deciding child support, the difference in the amount of income is immaterial for the purpose of determining if there was a 10% change from the initial obligation, pursuant to R.C. 3119.79(A). The trial court found more than a 10% change from the initial support obligation to the amount of the obligation based on father's income *including* capital gains. If capital gains was *not included* in father's income, the amount of his income would be reduced, which would still constitute more than a 10% change from the initial support obligation.

{¶ 34} We also note that father did not raise, on appeal, that the trial court's finding of more than a 10% change was error. Absent a challenge by father as to this finding, no actual conflict exists which justifies appellate review of the calculations used by the trial court to reach its finding.

16.

**{¶ 35}** Accordingly, father's second assignment of error is denied as moot.

**{¶ 36}** The judgment of the Wood County Court of Common Pleas, Domestic Relations Division, is affirmed. Appellant, Matthew Dauer, Sr., is ordered to pay the costs of this appeal, pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.
_____
JUDGE
Gene A. Zmuda, J.

Myron C. Duhart, J.                              _____
CONCUR.                                                      JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.